Samuel A. Schwartz, Esq.
Nevada Bar No. 10985
Bryan A. Lindsey, Esq.
Nevada Bar No. 10662
Schwartz Law Firm, Inc.
6623 Las Vegas Blvd. South, Suite 300
Las Vegas, Nevada 89119
Telephone: (702) 385-5544
Facsimile: (702) 385-2741
Attorneys for R&S St. Rose, LLC

# UNITED STATES DISTRICT COURT
# DISTRICT OF NEVADA

| | |
|---|---|
| In re: | ) Case No.: 2:13-cv-02165-JCM |
| | ) |
| R&S ST. ROSE, LLC | ) Bankruptcy Case No. 11-14974-MKN |
| | ) |
| Debtor. | ) Chapter 11 |
| _____ | ) |
| | ) Appeal Ref. No. 13-41 |
| BRANCH BANKING AND TRUST | ) |
| COMPANY, SUCCESSOR IN | ) (On appeal from the United States |
| INTEREST TO FDIC AS RECEIVER | ) Bankruptcy Court for the District of |
| FOR COLONIAL BANK, N.A., | ) Nevada) |
| | ) |
| Appellant, | ) |
| | ) |
| v. | ) |
| | ) **APPELLEE R&S ST. ROSE,** |
| R&S ST. ROSE, LLC, | ) **LLC'S ANSWERING BRIEF** |
| | ) |
| Appellee. | ) |
| _____ | ) |

i

# TABLE OF CONTENTS

I.   STATEMENT OF JURISDICTION.................................................................1

II.  ISSUES PRESENTED ..............................................................................1

III. STANDARD OF REVIEW .........................................................................2

IV.  STATEMENT OF THE CASE ....................................................................2

V.   STATEMENT OF FACTS .........................................................................4

   A.   BACKGROUND .................................................................................4

   B.   THE INVOLUNTARY BANKRUPTCY INITIATED BY BB&T AGAINST ROSE ....5

   C.   THE DEBTORS' BANKRUPTCY CASES AND .............................................5

   BB&T'S MOTION FOR SUBSTANTIVE CONSOLIDATION ................................5

   D.   THE DEBTOR'S PLAN AND CONFIRMATION.........................................6

VI.  ARGUMENT ........................................................................................9

   A.   THE DEBTOR'S CLASSIFICATION OF THE CLARK COUNTY TAXING
AUTHORITY WAS PROPER ......................................................................9

   B.   CLARK COUNTY TAXING AUTHORITY'S AFFIRMATIVE VOTE ...................13
FOR THE DEBTOR'S PLAN CONSTITUTED AN IMPAIRED, .............................13
ACCEPTING CLASS IN SATISFACTION OF SECTION 1129(A)(10)........................13

   C.   THE BANKRUPTCY COURT'S FINDING THAT THE DEBTOR'S PLAN WAS
PROPOSED IN GOOD FAITH IS NOT CLEARLY ERRONEOUS ...............................17

VII. CONCLUSION ....................................................................................20

# TABLE OF AUTHORITIES

*Cases*

In re Abbotts Dairies of Pennsylvania, Inc., 788 F.2d 143 (3rd Cir. 1986) _____ 18

Cooter & Gell v. Hartmax Corp., 496 U.S. 384, 405 (1990) _____ 2

In re Bryson Properties XVIII, 961 F.2d 496, 501 (4th Cir. 1992) _____ 15

In re Equitable Development Corp., 196 B.R. 889, 893-94 (Bankr. S.D. Ala. 1996) _____ 15

In re Ewell, 7958 F.2d 276 (9th Cir. 1992) _____18

In re Gramercy Twins Assocs., 187 B.R. 112, 115 (Bankr. S.D.N.Y. 1995)   11, 14

In re Greenwood Point, LP, 445 B.R. 885 (Bankr. S.D. Ind. 2011)_____ 11, 12, 16

In re Hotel Associates of Tucson, 165 B.R. 470, 474 (9th Cir. BAP 1994 __ 13, 19

In re Jorgensen, 66 B.R. 104, 108-09 (9th Cir. B.A.P. 1986) _____ 3, 17

In re King-Wilson, 1998 WL 737997 (N.D. Cal. 1998) _____ 18

In re L&J Anaheim Assocs., 995 F.2d 940, 942-43 (9th Cir. 1993) __ 2, 12, 13, 15

In re Mangia Pizza Investments, LP, 480 B.R. 669 (Bankr. W.D. Tex. 2012) 13, 14, 15

In re Marshall, 721 F.3d 1032, 1046 (9th Cir. 2013) _____ 3, 17

In re Orchards Village Investments, 2010 WL 143706 _____ 13

In re Perdido Motel Group, Inc., 101 B.R. 289 (Bankr. N.D. Ala. 1989) _____ 12

In re Ropt Ltd. P'ship, 152 B.R. 406, 411 (Bankr. D.Mass. 1993) _____ 11, 14

In re Slimick, 928 F.2d 304, 307, n. 1 (9th Cir. 1990) _____ 1

In re Stolrow's Inc., 84 B.R. 167, 172 (9th Cir. B.A.P. 1988) _____ 3

In re Sunflower Racing, Inc., 219 B.R. 587, 597 (Bankr. D.Kan. 1998) _____ 11, 14

In re Val-Mid Associates, LLC, 2013 WL 139278 _____ 15, 16

In re Val-Mid Associates, LLC, 2013 WL 139278 (Bankr. D. Ariz. 2013)__ 15, 16

In re Village at Camp Bowie I, L.P., 710 F.3d 239 (5th Cir. 2013) _____ 19

Maddox v. Black, Raber-Kief & Assocs., 303 F.2d 910, 911 (9th Cir. 1962) _____ 1

Morales v. Trans World Airlines, Inc., 504 U.S. 374, 384 (1992) _____ 10

Pennbank v. Winters (In re Winters), 99 B.R. 658, 663-64 (Bankr. W.D. Pa. 1989) _____ 15

RaxLAX Gateway Hotel, LLC v. Amalgamated Bank, 132 S. Ct. 2065, 2071 (2012)_____ 11

United States v. Chase, 135 U.S. 255, 260 (1890) _____ 11

United States v. F. & M. Schaefer Brewing Co., 356 U.S. 227, 243 (1958) _____ 1

United States v. Hinkson, 585 F.3d 1247, 1261-63 (9th Cir. 2009)_____ 2

**Statutes**

11 U.S.C.§ 507(a)(8) _____ 9

11 U.S.C.§ 1123(a)(1) _____ passim

11 U.S.C. § 1124(1) _____ 2, 12, 17, 19

11 U.S.C. § 1129(a)(3)_____ 2, 3, 9

11 U.S.C. § 1129(a)(9)_____ passim

11 U.S.C. § 1129(a)(9)(C) _____ 9

11 U.S.C. § 1129(a)(9)(D) _____ 10, 16

11 U.S.C. § 1129(a)(10)_____ 1,3, 8,13, 16

28 U.S.C.§ 158(a)(1) _____ 1

11 U.S.C. § 507(a)(8)_____ 9

**Rules**

FRBP 3020(b)(2) _____ 18

## I.   STATEMENT OF JURISDICTION

The District Court has jurisdiction to hear bankruptcy appeals from final judgments, orders, and decrees.  See 28 U.S.C. § 158(a)(1).  A bankruptcy order is final if it "end[s] any interim disputes from which appeal would lie."  In re Slimick, 928 F.2d 304, 307, n. 1 (9th Cir. 1990) (internal quotation marks and citations omitted).  A disposition is final if it contains "a complete act of adjudication," that is, a full adjudication of the issues at bar, and clearly evidences the judge's intention that it be the court's final act in the matter. United States v. F. & M. Schaefer Brewing Co., 356 U.S. 227, 243 (1958); Maddox v. Black, Raber-Kief & Assocs., 303 F.2d 910, 911 (9th Cir. 1962).

## II.   ISSUES PRESENTED

1.   Whether the Bankruptcy Court erred in confirming R&S St. Rose, LLC's ("**Rose**" or the "**Debtor**") First Amended Liquidating Plan of Reorganization (the "**Plan**")?

2.   Whether the Bankruptcy Court erred by finding the secured tax claim of the Clark County Taxing Authority ("**Clark County**") to be property classified as a class for voting purposes?

3.   Whether the Bankruptcy Court erred by finding Clark County's claim to be an impaired, accepting class in satisfaction of Section 1129(a)(10)?

1

4.     Whether the Bankruptcy Court's finding that the Debtor's Plan was proposed in good faith and not by any means forbidden by law in accordance with Section 1129(a)(3) was clearly erroneous?

### III.   STANDARD OF REVIEW

Whether a bankruptcy court applied the correct legal standard is reviewed for abuse of discretion (see Cooter & Gell v. Hartmax Corp., 496 U.S. 384, 405 (1990), while its findings of fact are reviewed for clear error.  United States v. Hinkson, 585 F.3d 1247, 1261-63 (9th Cir. 2009).  Mixed questions of law and fact are reviewed de novo.  Id.

Accordingly, in this matter, whether the Bankruptcy Court applied the correct legal standard is reviewed for abuse of discretion, while the Bankruptcy Court's findings are reviewed for clear error, unless such findings involved mixed questions of law and fact, which will then be reviewed de novo.

### IV.   STATEMENT OF THE CASE

Section 1129(a)(9) of the Bankruptcy Code requires a proposed Chapter 11 plan to treat certain enumerated claims in very specific ways "except to the extent that the holder of a particular claim has agreed to a different treatment of such claim."  Indeed, in the Ninth Circuit, any alteration of the claimant's rights, including an enhancement of those rights, constitutes impairment under Section 1124(1).  In re L&J Anaheim Assocs., 995 F.2d 940, 942-43 (9th Cir. 1993).  The

proper inquiry is whether the alteration of rights was proposed in good faith rather than being done solely to create an impaired class to vote in favor of the plan. Id. at 943, n.2.

A Chapter 11 plan is proposed in good faith if it achieves "a result consistent with the objectives and purposes" of the Bankruptcy Code and exhibits "fundamental fairness" in dealing with creditors.  See In re Marshall, 721 F.3d 1032, 1046 (9th Cir. 2013); In re Jorgensen, 66 B.R. 104, 108-09 (9th Cir. B.A.P. 1986).  The totality of the circumstances should be considered in determining good faith.  In re Stolrow's Inc., 84 B.R. 167, 172 (9th Cir. B.A.P. 1988).

Applying the above standards, the Bankruptcy Court correctly confirmed the Debtor's Plan by finding the secured tax claim of Clark County in Class 1 of the Plan was properly classified for voting purposes, and whose vote in favor of the Plan constitute an impaired accepting class in satisfaction of Section 1129(a)(10).

The Bankruptcy Court also correctly found the Debtor's Plan to be filed in good faith in satisfaction of Section 1129(a)(3), as the Debtor had valid economic and business reasons to impair Clark County's claim.   Accordingly, the Bankruptcy Court's order confirming the Debtor's Plan should be affirmed.

# V.   STATEMENT OF FACTS

## A.   Background

The Appellants' statement of facts and supporting appendix ("**App**") regarding the Debtor's history, its acquisition of its single asset, approximately 38 acres of real property in Henderson, Nevada (the "**Property**"), and the lien priority dispute between the Appellant, Branch Banking & Trust Co. ("**BB&T**") and R&S St. Rose Lenders ("**Lenders**") is not relevant. Importantly, the relevant facts regarding these matters were established in the order of Judge Elizabeth Gonzalez of the Eighth Judicial District Court for the District of Nevada on June 18, 2010, with Findings of Fact and Conclusions of Law (the "**State Court Order**"). See Appellee's Supplemental Appendix ("**Supp. App.**"). Ex. 1. The Nevada Supreme Court affirmed the State Court Order on May 31, 2013, and subsequently denied BB&T's petitions: (i) for rehearing on September 26, 2013; and (ii) for rehearing en banc on February 21, 2014. See Supp. App., Ex. 2, 3.

Importantly, the State Court Order, as affirmed by the Nevada Supreme Court, established that Lenders' recorded deed of trust on the Debtor's Property has priority over the recorded deed of trust of BB&T (as successor in interest to Colonial Bank). See State Court Order, Conclusions of Law, ¶ 29, See Supp. App., Ex. 1. Simply put, the facts of this case are no longer in dispute.

**B.**      **The Involuntary Bankruptcy Initiated by BB&T Against Rose**

Just prior to the State Court Order, BB&T initiated an involuntary bankruptcy petition against the Debtor in the United States Bankruptcy Court for the District of Nevada, Case No. 10-18827-MKN.  Following a motion to dismiss the involuntary case filed by the Debtor and a hearing on the matter, the Bankruptcy Court entered an order dismissing the involuntary bankruptcy case in October 2010.  <u>See</u> Case No. 10-18827-MKN, Docket No. 36.

**C.**      **The Debtors' Bankruptcy Cases and
            BB&T's Motion for Substantive Consolidation**

On April 4, 2011, the Debtor and Lenders each filed a voluntary petition for relief under Chapter 11 of the United States Bankruptcy Code in the United States Bankruptcy Court for the District of Nevada, Case Nos. 11-14974-MKN and 11-14973-MKN, respectively.

On May 1, 2012, BB&T filed motions (collectively, the "**Motion**") in both the Lenders and Rose bankruptcy cases seeking substantive consolidation of the Debtors' estates.   Commonwealth Land Title Insurance Company ("**Commonwealth**") filed a joinder to BB&T's Motion.  On June 11, 2012, the Debtors opposed the Motion, and on July 3, 2012, BB&T filed its reply.

On July 19, 2012, the Bankruptcy Court held a hearing on the Motion for substantive consolidation and heard the parties' arguments.  On September 4,

5

2012, the Bankruptcy Court issued an order (the "**Bankruptcy Court Order**") denying the motions for substantive consolidation.

On September 12, 2012, BB&T appealed the Bankruptcy Court Order to this Court.  On September 18, 2012, Commonwealth appealed the Bankruptcy Court Order to this Court.  This Court subsequently consolidated the multiple appeals under consolidated Case No. 2:12-cv-01615-LDG-GWF.  On August 16, 2013, Rose filed a motion to dismiss the BB&T and Commonwealth appeals based on the Nevada Supreme Court's affirmance of the State Court Order's findings of fact and conclusions of law.  On March 18, 2014, this Court denied Rose's motion to dismiss.  The appeals remain pending before this Court.

**D.     The Debtor's Plan and Confirmation**

On July 18, 2012, the Debtor filed its proposed Chapter 11 liquidating plan and disclosure statement (App, Ex. 1).  On July 24, 2012, the Debtor filed a motion for approval of certain procedures with respect to plan confirmation (the "**Procedures Motion**"), as well as bidding procedures governing the sale of the Property.  (App., Ex. 3).  On January 22, 2013, the Debtor filed its amended disclosure statement and its first amended Plan.  (App. Ex. 10, 11).  On January 28, 2013, the Bankruptcy Court approved the amended disclosure statement and Procedures Motion.  (App., Ex. 12, 13).  On June 25, 2013, the Bankruptcy Court entered an order scheduling a confirmation hearing for the Plan on October 21,

2013.  (App., Ex. 13).  On August 2, 2013, the Debtor filed a "clean" version of its first amended Plan, filed notices of hearing with respect to confirmation of the Plan and auction of the Property, and commenced solicitation of its Plan.  (App., Ex. 15).

The Debtor's Plan proposed to sell the Debtor's Property through an auction process to the highest bidder, and distribute the resulting proceeds to its creditors, in accordance with the following five (5) classes:

| Class # | Description | Impairment | Treatment |
|---|---|---|---|
| Class 1 | Secured Claim of the Clark County Taxing Authority | Impaired | Paid in full, on the 90th Day after the Effective Date of the Plan from the proceeds of the sale of the Debtor's Property. |
| Class 2 | Secured Claim of R&S St. Rose Lenders, LLC | Impaired | Paid the amount of any Property sale proceeds up to the amount due and owing with respect to the Loan Documents, and after the payment of Allowed Administrative Claims and Class 1 Claims. |
| Class 3 | Secured Claim of Branch Banking & Trust Company | Impaired | Paid the amount of any Property sale proceeds up to the amount due and owing with respect to the Loan Documents, and after the payment of Allowed Administrative Claims, Class 1 Claims and Class 2 Claims. |
| Class 4 | General Unsecured Claims | Impaired | Paid its Pro Rata share of any Property sale proceeds remaining after the satisfaction of Allowed Administrative Claims and Allowed Claims in Classes 1 – 3. |

| Class 5 | Equity Interests | Impaired | Equity Interest Holders will not be retaining their Equity Interests in the Reorganized Debtor. |
|---------|------------------|----------|------------------------------------------------------------------------------------------------|

(App, Ex. 10, 11).

On October 14, 2013, the Debtor's counsel submitted a declaration certifying the voting on and tabulation of votes accepting and rejecting the Debtor's Plan (the "**Ballot Tabulation**") (App., Ex. 24).  According to the Ballot Tabulation, Clark County in Class 1 and Lenders in Class 2 voted to accept the Plan, and BB&T in Class 3 rejected the Plan.  BB&T and Commonwealth also rejected the Plan is Class 4, while Lenders and creditor Bailus Cook & Kelesis accepted the Plan in Class 4.  No ballots in Class 5 were received.  Accordingly, Classes 1 and 2 accepted the Plan, while Classes 3, 4 and 5 rejected the Plan.

On October 21, 2013, the Bankruptcy Court held a hearing to consider confirmation of the Debtors' Plan, and heard arguments of the Debtor, BB&T and Commonwealth.  The Bankruptcy Court also conducted an auction of the Debtor's Property, which resulted in an increase of the sale price of the Property by $2 million, from $11,500,000 to $13,500,000.

On November 8, 2013, the Bankruptcy Court entered a 34-page memorandum decision confirming the Debtor's Plan.  (App., Ex. 27).

Importantly, the Bankruptcy Court found Clark County to be properly classified for voting purposes, and whose vote in favor of the Plan constituted an impaired accepting class in satisfaction of Section 1129(a)(10).  Id. at 9-11.   The Bankruptcy Court also correctly found the Debtor's Plan to be filed in good faith in satisfaction of Section 1129(a)(3).  Id. at 21-25.

## VI.   <u>ARGUMENT</u>

### A.   The Debtor's Classification of the Clark County Taxing Authority Was Proper

Section 1123(a)(1) of the Bankruptcy Code permits a proposed Chapter 11 plan to designate classes of claims "other than claims of a kind specified in section . . . 507(a)(8) of this title."  11 U.S.C. § 1123(a)(1).  Section 507(a)(8) includes <u>unsecured</u> claims of governmental units that are for a "property tax incurred before the commencement of the case. . . ."  11 U.S.C. § 507(a)(8) (emphasis added).

In this matter, Clark County's claim is a <u>secured</u> tax claim.  As correctly noted by the Bankruptcy Court, "[b]ecause Clark County's claim is secured by the Property, Section 1123(a)(1) does not by its terms prohibit its claim from being classified in the proposed Amended Plan."  <u>See</u> Order Confirming Debtor's Plan, App., Ex. 28, p. 9, n.23.  Indeed, despite BB&T's circuitous analysis to the contrary, this issue is simple:  section 1123(a)(1) by its express terms prohibits

9

classification of unsecured tax claims, but does not prohibit classification of secured tax claims.

BB&T argues that because Section 1129(a)(9)(C) requires minimum treatment of an unsecured tax claim set forth in Section 507(a)(8), and Section 1129(a)(9)(D) requires the same minimum treatment of secured tax claims as unsecured tax claims (i.e. payment in full within 5 years of the petition date), the rule prohibiting classification of unsecured tax claims must also extend to unsecured tax claims.  Simply put, BB&T's argument misses the mark.

First, BB&T confuses the terms "classification" and "treatment."  Section 1123(a)(1) deals with "classification" of claims, while Section 1129(a)(9) deals with certain minimum "treatment" of claims.  The required minimum treatment of a secured tax claim set forth in Section 1129(a)(9)(D) does not prohibit how such claim may be classified.

Second, section 1123(a)(1), by its express terms, prohibits classification of unsecured tax claims but does not prohibit classification of secured tax claims. The Bankruptcy Court correctly acknowledged and interpreted this plain language of Section 1123(a)(1).  See Order Confirming Debtor's Plan, App., Ex. 28, p. 9, n.23.

Third, notwithstanding the plain language of the statute, rules of statutory construction also lead to the same result.  It is a commonplace of statutory

construction that the specific governs the general.   Morales v. Trans World Airlines, Inc., 504 U.S. 374, 384 (1992).   Indeed, the Supreme Court recently confirmed the long standing rule:

> "It is an old and familiar rule that, where there is, in the same statute, a particular enactment, and also a general one, which, in its most comprehensive sense, would include what is embraced in the former, the particular enactment must be operative, and the general enactment must be taken to affect only such cases within its general language as are not within the provisions of the particular enactment. This rule applies wherever an act contains general provisions and also special ones upon a subject, which, standing alone, the general provisions would include."

RaxLAX Gateway Hotel, LLC v. Amalgamated Bank, 132 S. Ct. 2065, 2071 (2012); quoting United States v. Chase, 135 U.S. 255, 260 (1890).   Accordingly, the express terms of Section 1123(a)(1), which prohibit classification of unsecured tax claims but not secured tax claims, and the aforementioned rules of statutory construction, fly in the face of BB&T's argument.

Fourth, the above-analysis is also confirmed by case law throughout the United States, which routinely allows classification of secured tax claims.   See e.g. In re Greenwood Point, LP, 445 B.R. 885 (Bankr. S.D. Ind. 2011) (holding that a secured tax claim may constitute an impaired, voting class); In re Sunflower Racing, Inc., 219 B.R. 587, 597 (Bankr. D.Kan. 1998) aff'd, 226 B.R. 673 (D.Kan. 1998) (noting that class consisting of secured claim of a county treasurer is impaired as has voted to accept a plan); In re Gramercy Twins

11

Assocs., 187 B.R. 112, 115 (Bankr. S.D.N.Y. 1995) (noting that a class consisting of a city tax lien was impaired and entitled to vote); In re Ropt Ltd. P'ship, 152 B.R. 406, 411 (Bankr. D.Mass. 1993) (declaring that a town was entitled to vote because the plan altered the town's legal rights with regard to its fully-secured tax lien).

Finally, the one case cited by BB&T in support of its position regarding the classification of secured tax claims, In re Perdido Motel Group, Inc., 101 B.R. 289 (Bankr. N.D. Ala. 1989), involved classification of priority, unsecured tax claims. Therefore, In re Perdido is inapplicable to the case. Indeed, the United States Bankruptcy Court for the Southern District of Indiana correctly noted this distinction. In re Greenwood Point, LP, 445 B.R. 885 (Bankr. S.D. Ind. 2011) (noting the prohibition on classification of unsecured tax claims, as found in In re Perdido, did not apply to secured tax claims).

Accordingly, the express terms of 1123(a)(1) do not prohibit classification of secured tax claims, which is confirmed by rules of statutory construction and existing case law. Therefore, the Bankruptcy Court did not err in allowing Clark County's claim to be classified for voting purposes.

12

**B.      Clark County Taxing Authority's Affirmative Vote
for the Debtor's Plan Constituted An Impaired,
Accepting Class in Satisfaction of Section 1129(a)(10)**

In the Ninth Circuit, any alteration of the claimant's rights, including an enhancement of those rights, constitutes impairment under Section 1124(1). In re L&J Anaheim Assocs., 995 F.2d 940, 942-42 (9th Cir. 1993). Indeed, the "Ninth Circuit standard for the designation of impaired classes in relatively liberal." In re Orchards Village Investments, 2010 WL 143706, *14, citing In re L&J, 940 F.2d at 942-43. Simply put, a creditor's claim is "impaired" under the Bankruptcy Code unless its rights are left unaltered by a plan of reorganization, and Section 1124 of the Bankruptcy Code defines "impairment" in the broadest possible terms. In re Hotel Associates of Tucson, 165 B.R. 470, 474 (9th Cir. BAP 1994, citing In re L&J, 940 F.2d at 942. Therefore, if a creditor's legal, equitable or contractual rights are altered by a plan of reorganization, its claim is to be considered impaired. Id.

Guided by the broad definition of "impairment" and existing Ninth Circuit case law cited above, the Bankruptcy Court correctly ruled Clark County's affirmative vote for the Debtor's Plan constituted an impaired accepting class in satisfaction of Section 1129(a)(10) of the Bankruptcy Code.

In support of its arguments to the contrary, BB&T principally relies on a 2012 decision from the United States Bankruptcy Court for the Western District

13

of Texas, In re Mangia Pizza Investments, LP, 480 B.R. 669 (Bankr. W.D. Tex. 2012).    In Mangia Pizza, a creditor sought to take control of the debtor's business, Mangia Pizza, by purchasing the claim of an unsecured creditor for $244.66, and then filed a competing plan of reorganization as exclusivity had expired.    Id. at 675.    Importantly, the creditor's plan sought to pay unsecured creditors a 22% dividend, while the debtor's competing plan sought to pay unsecured creditors in full over time.    Id.    The only vote for the competing creditor's plan came from a secured IRS tax claim, and the court, while recognizing that several other courts[1] allowed classes of secured tax claims to vote, ruled that a secured tax claim should not be classified for purposes of voting and cram down.  Id. at 678-79.

Importantly, however, the Bankruptcy Court correctly rejected Mangia Pizza's rationale, and followed the Ninth Circuit's broad language of impairment, as well as the majority of other cases allowing secured tax claims to constitute impaired accepting classes.  Specifically, the Bankruptcy Court stated:

> Unfortunately, that rationale [of the Mangia Pizza court] overlooks the broad language of Section 1129(a)(9) that expressly allows the holder

---

[1]    See e.g. In re Greenwood Point, LP, 445 B.R. 885 (Bankr. S.D. Ind. 2011) (holding that a secured tax claim may constitute an impaired, voting class); In re Sunflower Racing, Inc., 219 B.R. 587, 597 (Bankr. D.Kan. 1998) aff'd, 226 B.R. 673 (D.Kan. 1998) (noting that class consisting of secured claim of a county treasurer is impaired as has voted to accept a plan); In re Gramercy Twins Assocs., 187 B.R. 112, 115 (Bankr. S.D.N.Y. 1995) (noting that a class consisting of a city tax lien was impaired and entitled to vote); In re Ropt Ltd. P'ship, 152 B.R. 406, 411 (Bankr. D.Mass. 1993) (declaring that a town was entitled to vote because the plan altered the town's legal rights with regard to its fully-secured tax lien).

of the claim to agree "to a different treatment of such claim." Moreover, it does not account for provisions in Chapter 11 permitting other creditors who have unique statutory rights to vote or pursue their own interests irrespective of the interests of otherwise similarly situated claimants. For example, a nonrecourse secured creditor can elect treatment as fully secured creditor even though its undersecured claim determined under Section 506(a) could potentially control acceptance by the general unsecured class. See 11 U.S.C. § 1111(b). Likewise, the holder of an allowed unsecured claim can object to confirmation and force an individual Chapter 11 debtor to devote his projected disposable income to payment of unsecured creditors rather than other claims. See 11 U.S.C. § 1129(a)(15)(B). Thus, the court does not find the Mangia Pizza decision persuasive and instead is guided by the broad language of impairment recognized in L&J Anaheim.

See Order Confirming Debtor's Plan, App., Ex. 28, p. 11, n.27.

Furthermore, the other cases cited by BB&T are not persuasive and are distinguishable to this case. Specifically, In re Equitable Development Corp., 196 B.R. 889, 893-94 (Bankr. S.D. Ala. 1996), In re Bryson Properties XVIII, 961 F.2d 496, 501 (4th Cir. 1992), and Pennbank v. Winters (In re Winters), 99 B.R. 658, 663-64 (Bankr. W.D. Pa. 1989) each involved a plan's treatment of unsecured priority tax claims. Simply put, these cases are inapplicable to this case, and the Plan's treatment of the secured tax claim of the Clark County.

Finally, BB&T cites a recent case out from the United States Bankruptcy Court for the District of Arizona, where the court found a plan's treatment of Pima County's secured tax claim to be unimpaired. In re Val-Mid Associates, LLC, 2013 WL 139278 (Bankr. D. Ariz. 2013). In that case, the debtor's plan

did not impair Pima County's claim because it did not alter any payments or lien rights of Pima County, rather, the plan simply transferred the obligation to pay Pima County's claim to the secured creditor, whereby Pima County would retain its lien, as well as all rights and remedies with respect to enforcement thereof. Id. at *1-2.

In this case, the Debtor's Plan altered both the payment and lien rights of Clark County, as the Plan transferred the Debtor's Property on the effective date free and clear of all liens, including Clark County's lien, and did not provide payment in full to Clark County until the 90th day after the effective date of the plan. Indeed, the facts of this case are similar those of In re Greenwood Point, LP, 445 B.R. 885 (Bankr. S.D. Ind. 2011). In Greenwood Point, the debtor's plan delayed payment to Marion County on account of its secured tax claim, but provided for the release of its lien upon the effective date of the plan. Id. at 907. Importantly, the United States Bankruptcy Court for the Southern District of Indiana held:

> Section 1129(a)(9)(D) speaks only to the timing and amount of payments in its treatment of allowed secured tax claims and does not address treatment of the lien. Here, the Plan proposes the real estate will vest in the reorganized debtor free and clear of liens, including the lien of the Marion County Treasurer. The proposed loss of the Marion County Treasurer's valid lien rights prior to payment in full of its claim under the Plan is additional, and significant, impairment under Section 1124.

Id. at 907.  Indeed, even the Arizona bankruptcy court in <u>Val-Mid Associates</u> acknowledged there was a true impairment in <u>Greenwood Point</u>, because the plan provided, prior to full payment of the claim, the real estate would vest in the reorganized debtor free and clear of liens, including the tax lien.  <u>In re Val-Mid Associates, LLC</u>, 2013 WL 139278, at *2.

Like <u>Greenwood Point</u>, here, in this matter, the Debtor's Plan provided for the sale of the Property free and clear of all liens, including Clark County's secured tax lien, prior to payment in full of Clark County's claim.  Therefore, in accordance with the Ninth Circuit's broad definition of impairment, the Bankruptcy Court did not err in concluding the affirmative vote of Clark County constituted an impaired, accepting class in satisfaction of Section 1129(a)(10).

## C.   The Bankruptcy Court's Finding that the Debtor's Plan Was Proposed in Good Faith is Not Clearly Erroneous

Finally, BB&T appeals the Bankruptcy Court's finding that the Debtor's Plan was proposed in good faith.  As a general rule, a Chapter 11 plan is proposed in good faith if it achieves "a result consistent with the objectives and purposes" of the Bankruptcy Code and exhibits "fundamental fairness" in dealing with creditors.  <u>In re Marshall</u>, 721 F.3d 1032, 1046 (9th Cir. 2013); <u>In re Jorgensen</u>, 66 B.R. 104, 108-09 (9th Cir. B.A.P. 1986).  The totality of the circumstances should be considered in determining good faith.

17

Importantly, the focus on the good faith requirement is the plan itself and whether such a plan will fairly achieve a result consistent with the objectives and purposes of the Bankruptcy Code.  In re PWS Holding Corp., 228 F.3d 224, 242 (3rd Cir. 2000).   Indeed, several other courts hold selling assets through an auction process and/or subject to overbids is evidence of good faith.  See In re Abbotts Dairies of Pennsylvania, Inc., 788 F.2d 143 (3rd Cir. 1986) (generally an auction may be sufficient to establish good faith and value for assets); In re Ewell, 958 F.2d 276 (9th Cir. 1992) (courts generally follow traditional equitable principles in finding good faith absent showing of fraud, collusion or attempt to take grossly unfair advantage of other bidders); In re King-Wilson, 1998 WL 737997 (N.D. Cal. 1998) (finding a sale of three parcels of real property subject to overbids was for fair and adequate consideration and in the best interests of the bankruptcy estate).

Here, BB&T argues the Debtor's Plan was not proposed in good faith because it artificially impaired Clark County's claim and provided no evidence justifying the Plan's treatment of Clark County.  See Opening Brief, pp. 22-23. BB&T misses the mark on both points.

First, as found by the Bankruptcy Court and illustrated herein, classification of Clark County's secured tax claim is not prohibited by Section

18

1123(a)(1), and Clark County's claim is impaired within the meaning of Section 1124(1).

Second, the Bankruptcy Court found valid economic and business reasons for the proposed treatment of Clark County's claim.  Specifically, the Debtor has no operations, no cash flow, and no funds to pay Clark County.  Thus, aside from the proceeds of the sale of the Debtor's Property, the Debtor did not have any funds to pay Clark County.  Furthermore, pursuant to the Plan, there was no fixed date for closing the sale of the Property.  Therefore, the impairment of the Clark County claim afforded the Debtor ample time to close the sale of its Property without the threat of Clark County taking steps to enforce its secured tax lien. Indeed, a debtor is under no obligation "to use all efforts to create unimpaired classes."  In re Hotel Assocs. of Tucson, 165 B.R. 470, 475 (9th Cir. B.A.P. 1994).

Third, notwithstanding the above, the Fifth Circuit Court of Appeals just last year upheld confirmation in a case and did not find the plan to be lacking in good faith where the debtor artificially impaired a class of unsecured trade creditors.  In re Village at Camp Bowie I, L.P., 710 F.3d 239 (5th Cir. 2013).

Fourth, the Debtor's principal, Saiid Forouzan Rad, submitted a declaration in support of the Debtor's Plan, which stated that the Plan was proposed in good faith.  See Rad Declaration, App., Ex. 26, ¶¶ 3-4.  Mr. Rad also

attended the confirmation hearing. Importantly, the Bankruptcy Court found the Rad Declaration to be the only direct evidence before the court on the issue of good faith, and pursuant to FRBP 3020(b)(2), the court may determine that a plan is proposed in good faith without taking evidence on the issue if no objection is filed.

Finally, the Debtor's Plan was an auction plan, which proposed to sell the Debtor's single asset, the Property, and use the proceeds to pay creditors in accordance with their lien priority as established by the Nevada Supreme Court. Indeed, the Plan's purpose, to conduct an auction to maximize the value for the estate and enhance the return to creditors, is consistent with the objectives and purposes of the Bankruptcy Code. Therefore, the Debtor's impairment of Clark County's claim was not artificial, and the Bankruptcy Court's finding that the Plan was proposed in good faith was not clearly erroneous.

## VII.   <u>CONCLUSION</u>

The Bankruptcy Court correctly affirmed the Debtor's First Amended Plan. Section 1123(a)(1) does not prohibit classification of Clark County's secured tax claim and the Bankruptcy Court, following the Ninth Circuit's broad definition of impairment, correctly concluded the Clark County's secured tax claim was impaired in accordance with Section 1124(1). Finally, the Bankruptcy Court's did not commit clear error in finding that the Debtor's Plan was proposed in good

faith.   Accordingly, the Bankruptcy Court's confirmation of the Debtor's Plan should be affirmed.

Dated this 19th day of March, 2014.

/s/ Samuel A. Schwartz_____
Samuel A. Schwartz, Esq.
Nevada Bar No. 10985
Bryan A. Lindsey, Esq.
Nevada Bar No. 10662
The Schwartz Law Firm, Inc.
6623 Las Vegas Blvd. South, Suite 300
Las Vegas, Nevada 89119
Telephone: (702) 385-5544
Facsimile: (702) 385-2741
Attorneys for R&S St. Rose, LLC

## <u>CERTIFICATE OF SERVICE</u>

I HEREBY CERTIFY that a true and correct copy of the foregoing was sent via ELECTRONIC MAIL to the following on March 19, 2014:

RICHARD L. DOXEY on behalf of Appellants Branch Banking & Trust Company
rdoxey@hutchlegal.com, fghadiri@hutchlegal.com

JOSEPH S. KISLER on behalf of Appellants Branch Banking & Trust Company
jkistler@hutchlegal.com, bpereira@hutchlegal.com

SCOTT E. GIZER on behalf of Appellants Commonwealth Land Title Insurance Company
sgizer@earlysullivan.com


/s/ Janine Lee
    Janine Lee

22